The master of an apprentice cannot take him out of the state where the indentures were executed, unless the indentures give the power, or it follows from the nature of the mystery which the apprentice is to learn.

## The Commonwealth *against* EDWARDS.

A HABEAS CORPUS issued to the defendant, to bring up the body of *Maria Slack*, an infant, in his custody, to which he made return, that he held her as an apprentice to serve until the age of eighteen, by virtue of an indenture duly executed by an overseer of the poor in the borough of *Norfolk, Virginia.*

Upon the hearing, it appeared that the indenture was dated the 23d of *May* 1811, and was executed by *Francis Butt*, one of the overseers of the poor for the borough of *Norfolk*, and by *Henry Edwards* for himself and his wife; and it recited that *Butt*, in pursuance of an order of Court of the preceding month, bound the minor, an orphan child, to *Edwards* and wife, to learn the art of a *milliner*, until she should arrive at the age of eighteen, the master and mistress to find her in meat, washing, lodging, clothes &c., to have her taught reading and writing, and to give her twelve dollars at the expiration of her apprenticeship.

*S. Ewing* for the minor. The indenture made in *Virginia*, has no force in *Pennsylvania*. It is local as to its objects, it proceeds from a law purely municipal, and has no efficacy except within its own jurisdiction. It is moreover violated and annulled by the act of the master, in bringing the minor out of the state where she was bound; a

power which a master has not generally at common law, and which, for the best reason, he should not be permitted to have, except where the nature of the art to be taught, particularly requires it. In this case, no law of *Virginia* is shewn to authorize the removal; and by bringing her away, the peculiar protection of *Virginia* laws and courts in cases of apprentices is lost, and no such protection is gained here. The law in authorizing overseers of the poor to bind out minors, intends that they shall be kept where the same law can do them justice. If the overseer of *Norfolk* meant to give the. power of removal, his authority must be shewn, otherwise the master must be subject to the general principle. *Coventry* v. *Woodhaugh* (*a*), 4 *Bac. Abr.* 578, *Master & Servant 'E.*, *Hall* v. *Gardner* (*b*), *Davis* v. *Coburn.* (*c*).

*Badger* for the defendant. The trust of an apprentice, is I agree, a personal trust; this prevents an assignment of the indentures. But the master continuing to be the same person, I deny that there is any decision against his authority to take the apprentice out of the realm with him. In many cases it is necessary, particularly in the case of seamen, which cannot be deemed an exception. If the law imperatively prohibits a master from taking his apprentice beyond sea, it must prohibit such an indenture as gives him the authority. It seems therefore that either minors cannot be bound apprentices to the sea, which we know is not the case, or that the master has the authority we contend for in all cases. But another objection to this Court's interference is, that the indentures were made by authority of a Court of competent jurisdiction, which ought to be respected every where. The master is here compellable to provide for the infant; he should therefore have the custody of her person. *Commonwealth* v. *Hamilton* (*d*).

TILGHMAN C. J. *Maria Slack*, an infant, now in her 16th year, was bound apprentice from the age of 13 to 18, to *Henry Edwards* and his wife, to learn the art of a milliner, by an overseer of the poor for the borough of *Norfolk*, in the, state of *Virginia*, in pursuance of an order of Court. She is an orphan, and it is presumed that the binding was

1813.

COMMON-
WEALTH
*v.*
EDWARDS.

(*a*) 1 *Botts P. L.* 508. *pl.* 710.     (*c*) 8 *Mass.* 304.
(*b*) 1 *Mass.* 180.     (*d*) 6 *Mass. Rep.* 275.

COMMON-
WEALTH
*v.*
EDWARDS.

according to the law of *Virginia. Edwards* and wife removed from *Virginia* to this city, and brought the girl with them, and now detain her by virtue of the indenture of apprenticeship. Although there is no express stipulation that the apprentice shall not be removed from *Virginia*, yet it is to be so understood from the nature of the case. It must be supposed, that when the legislature of any state vests in its courts a power over the persons of orphans, that power is to be so exercised, that the orphans shall not be withdrawn to places beyond the jurisdiction of the state, except those who are bound to the sea service, which must necessarily call them abroad. While within that jurisdiction, they are sure of protection from the same laws which authorized their binding. But the moment they enter a country where other laws prevail, they may receive treatment very different from what was contemplated by the Court under whose authority they were bound. If it be permitted to remove this apprentice beyond the limits of *Virginia*, she may be carried to the *West* or *East Indies*. There is no medium. The service must either be restricted to *Virginia*, or not restricted at all. The consequence of a boundless license of removal would be monstrous. Instead of affording protection to orphans, the Court which was entrusted with their superintendance, might only be exposing them to hardship and ruin. I am therefore of opinion that *Maria Slack* cannot be held in this state, by virtue of the indenture executed in *Virginia*. It will be understood that this opinion has no bearing on the case of negroes, bound to service in other states, until the age of twenty-eight years, and brought into this state before the term of service expires. Such persons are in a different situation from common apprentices, and their condition depends in part on the singular nature of their case, and in part on acts of assembly of our own.

YEATES J. I take it for granted, that the indenture of apprenticeship executed in this case by the overseers of the poor of the borough of *Norfolk*, was in exact conformity to the laws of *Virginia*. The only question to be decided by the Court on the *habeas corpus* is, whether the master of an apprentice so bound, can compel her to serve the residue of her time in this state?

The cases cited on behalf of *Maria Slack*, fully prove that an apprentice, who has been bound to learn any trade or occupation, cannot by the *English* common law be forced out of the kingdom, unless such removal is provided for in the indenture, or the nature of the contract requires it, as in the case of seafaring men &c. Independently of these authorities, we must presume that contracts of apprenticeship are entered into with reference to the laws of the government where they are made, which secure to the apprentice protection against the misconduct of the master, and redress for injuries inflicted by him. Although the indenture is silent upon this subject, it cannot be supposed that the parties thereto contemplated a removal by the master from *Virginia* into *Pennsylvania*, and the principle upon which such a change of situation could be defended, would justify his removal into the most distant country. No one can say, that it could be the intention of the present parties, that this girl should be thus separated from her friends and connections. I am therefore of opinion, that *Edwards* cannot detain *Maria Slack* under this indenture, and that she should be discharged from his custody.

BRACKENRIDGE J. Where the nature of the mystery to be learned leads to it, that of seamanship for instance, a carrying out of the state for a time, and with a view to that object, might be lawful, if such binding as an apprentice and carrying out were allowable by the laws of that state, but not otherwise. A person of full age binding himself *tali aspectu*, might be carried out, and a parent binding *tali aspectu* might make such binding effectual, and a law of a state providing that a guardian should have power to bind to such apprenticeship, might make such binding valid, that is, an occasional and temporary binding out. But still such binding or contract must be with a view to that apprenticeship, otherwise it must be considered a *fraud*, and not within the contract to carry out of the state. It would be a trespass to carry without such consent. By the common law, no one can be carried out of the realm of *England* without his consent, whatever obligation there might have been upon him, or interest in another to have him taken out. The case of *Somerset* v. *Stewart*, *Loft's Reports*, shews this, and *Har-*

*grave's State Trials, last volume.* Had negro *Somerset* gone on board a merchant vessel, and even out of the municipal jurisdiction, he could not have been taken out of the floating domicil, but would have been protected by the law of nations, at least by the arm of the government of *England;* for that nation never did suffer a search for the purpose of *taking men,* but for the purpose of *ascertaining the character of the vessel only.* This I have considered more at length, in a publication which I have upon the stocks, and may appear in due time. An apprentice cannot be taken out of this state, not even with his consent nor that of his guardian; for the guardian cannot be supposed to have the power of contracting for such purpose, the law of the state not expressly giving it, and perhaps it could not give it, so as to have the extra-territorial effect of continuing that apprenticeship beyond the jurisdiction. On every ground therefore I am of opinion that the apprentice be discharged.

Apprentice discharged.