The opinion of the Court was delivered by
Tilghman, C. J.
It appears by the return to the habeas corpus in this case, that James King was committed by the Mayor of the city of Philadelphia, as an apprentice who had absconded from the service of his master, John Preece. The question, therefore, is, whether James King was the lawful apprentice of John Preece, at the time of the commitment? The indenture of apprenticeship has been produced, by which it appears, that on the 2d of September, 1816, King, with the consent of his guardian, James Wilson, (his father being dead,) bound himself apprentice to Preece, then of the city of London, gold beater, for the term of seven years, to learn, and be instructed in the art of a gold beater. Preece received a fee of twenty-nine pounds sterling. The indenture contains the usual covenants on both sides, except that the apprentice was to find himself wearing apparel, at his own cost, and was also to pay the expense of washing, and physic and surgery, when necessary. Preece left England and came *527 to Philadelphia, with his family, in the year 1819. He brought King with him, it is presumed, with his own consent, because there is no evidence of compulsion, nor of any complaint by , . . . * him on the passage, or on his arrival in this city. I think it does not admit of a doubt, that an apprentice bound in England to learn an art which does not necessarily require him to leave the kingdom, cannot be carried out without his own consent; although the counsel for Mr. Preece has contended that, by the principles of the common law, he may be carried out, provided his master accompanies him. This principle is endeavoured to be established by the case of Coventry v. Woodhall, reported in Brownl. 67, and Hob. 134. In 3 Vin. 19. Apprentice, (B.) pi. 1, this case is cited from Brownlow, and thus abridged. “ Adjudged that a master cannot send his apprentice beyond sea, except himself goes with him, but he may send him to any part of England.” But in Hobart, where the case is better reported, we see exactly what it was, (and, by the bye, Hobart’s Reports are very good authority, for Lord Hardwicks says, 1 Fez. 305, that the notes in Hobart are allowed to be his own.) It was an action of covenant on an indenture of apprenticeship, by which Woodhall, the defendant, undertook “ to retain, keep, teach, and employ the apprentice in his own house and service, in the art of surgery during the term.” The breach assigned was, that within the term, the defendant sent the apprentice on a' voyage to Bantam, in the East Indies. The defendant pleaded, that he sent him in company of other expert surgeons, the better to learn the art. To this plea the plaintiff demurred, and judgment was given for him. Now it is impossible, that upon these pleadings and demurrer, the Court could have decided, that the master might carry his apprentice out of the kingdom, provided he went with him. If any thing of that kind fell from any of the Judges, it was but an extra-judicial dictum. But Hobart takes no notice of any such dictum, although he goes on to mention what he said himself. “ And •generally, (says he) no man can force his apprentice to go oat of the kingdom, except it be so expressly agreed, or that the nature of his apprenticeship doth import it, as if he be bound apprentice to a merchant adventurer, or a sailor, or the like’’ The probability is, that in Brownlow’s report of the case, these expressions of Hobart’s are inaccurately stated, for it can hardly be supposed that any Judge went further than is re *528 ported by Hobart.- This Court had reason to consider this point fully in the case of The Commonwealth v. Edwards, 6 Binn. 202, where we decided, that an indenture of apprenticeship, taken under the authority of the overseers of the , p0or> jn Virginia, was not obligatory in this State. And the same point was decided by the Supreme Court of Massachusetts, where the binding was. in Canada. 6 Mass. Rep. 273. The Commonwealth v. Hamilton. Indeed, if it were altogether a new case, I should think it extremely clear. When the law of any country permits an infant to bind himself to serve another, it is with a view to the infant’s benefit, and to the protection afforded him by the same law. Besides, the very nature of the contract shews, that it never could 'have been intended to give power to the master to carry' his apprentice to a foreign country. The health, the diet, the clothing, the protection of friends, as well as of laws, the local privileges and advantages derived from serving an apprenticeship; all these ai'e of importance to the infant, and all may be lost if he be carried abroad. Is it not monstrous to think, that a young man, bound apprentice, in a healthy country, where the society is civilized and well governed, should be torn from his friends and country, and carried to a bad climate, where the laws yield but feeble protection ? It is very true, that a removal from England to the United States of America, might be for the advantage of many apprentices. But if the principle, be just, they might be carried to any part of South America, of Africa, or the East Indies. And so might our own young men, bound in our own city', be carried to the same miserable places. The case is too plain to admit of much argument. Wé are struck with the truth as soon as the question is proposed. But it is contended, that in this case the apprentice consented to leave his country and follow the fortunes of his master. There is, to be sure, that kind of negative consent which arises from the apprentice’s making no complaint. But that has not much weight; an infant, under the control of his master, may easily be induced to acquiesce. A little coaxing, a little indulgence, a few fair promises, may persuade a young man, so circumstanced, to accompany his master. But that is not enough—we should have better evidence of his assent; and the proper evidence is, a new contract made after the arrival of the master and apprentice in the United States, under the sanction pf our own *529 laws. This may always be done, when there is fair dealing, and the apprentice is really willing to serve his master here. And where he is not willing, he should be at liberty either to return to his own country, or stay here and act as he thinks most for his interest. As for the policy of encouraging manufacturers to emigrate from Europe, by permitting them to retain their apprentices, it is a consideration by which this Court must not be influenced. We are to decide the law ; and even if we were permitted to alter it, I should not be for holding an infant appprentice, bound to a trade in Europe, to the obligation of serving his master in America, without his solemn consent, with full knowledge of his rights, after his arrival.
It is the opinion of the Court, that the indenture produced in this case is not binding here; and, therefore, the apprentice, James King, should be discharged.
Apprentice discharged.
Duncan, J. was absent.