## Commonwealth ex rel. Hall *against* Cook.

A citizen of the district of Columbia removed into Pennsylvania to reside, and brought with her a slave, who in consideration of manumission, with the consent of her mother, bound herself by indenture to serve for seven years. *Held:* That such indenture, having been executed in Pennsylvania, is void, and the slave is entitled to her liberty.

HABEAS CORPUS case.

*Ellen M. Williamson,* of the District of Columbia, was the owner of *Hannah Hall,* a slave for life; she removed into Pennsylvania to reside, and brought *Hannah* with her; after their residence here had commenced, the said *Hannah,* by and with the advice and consent of her mother, and in consideration of manumission, bound herself by indenture to serve for seven years. The indenture recited, that it was entered into in pursuance of a parol agreement made before their removal into Pennsylvania; but there was no proof of this fact. The indenture thus made was transferred to *George A. Cook.* The only question which arose was, whether an indenture in consideration of manumission, executed in Pennsylvania, had any validity.

*W. W. Fetterman,* for relator.
*Darrah,* for respondent.

The opinion of the Court was delivered by

ROGERS, J.—This was a *habeas corpus,* issued at the instance of *Hannah Hall.* The respondent returns, that he holds the said *Hannah Hall* by virtue of a deed of indenture, executed by the said *Hannah Hall,* by and with the consent of her mother of the one part, and *Ellen M. Williamson* and *B. Williamson* of the other, by which said indenture the said *Hannah Hall* binds herself to serve for the term of seven years, to learn the art and mystery of a servant and waiter; in consideration of manumission from slavery, granted in the District of Columbia, to the said *Hannah Hall.* The said indenture, by and with the consent of her mother, was assigned for a valuable consideration to the said *George A. Cook.* There are some facts connected with the case about which there is no dispute. It is agreed that *Hannah Hall was* the slave of *Ellen M. Williamson.* That the mistress brought her slave within the limits of the state, with the intention to reside in Pennsylvania. And that the indenture of servitude was not executed until the 10th of November 1830, several days after their arrival at Pittsburgh, with intention of making it a place of permanent abode. The second section of the act of 29th March 1788, enacts, that all and every slave or slaves, who shall be brought

[Commonwealth v. Cook.]

into this state, by persons inhabiting or residing therein, *or intending to inhabit or reside therein,* shall be *immediately* considered, deemed and taken to be free, to all intents and purposes. This section, among others, was enacted (as the preamble recites) for preventing many evils and abuses, arising from ill-disposed persons availing themselves of certain defects in the act for the gradual abolition of slavery, passed the 1st day of March, in the year of our Lord 1780. Under the construction which this act must receive, it will not admit of doubt, that unless something is shown other than the facts which I have stated ; the relator is entitled to be discharged. Her case is brought within the letter, and the obvious intention of the legislature, who have declared that as soon as the limits of the state are passed, with the purpose of settlement, the slave shall be deemed and taken free, to all intents and purposes. If free at the time the indenture was executed, the indenture is void ; the laws of Pennsylvania not recognizing such a contract, without regard to colour.

It is, however, contended, that the indenture is good, under the thirteenth section of the act of 1st March 1780. No covenant of personal servitude or apprenticeship whatsoever, shall be valid or binding on a negro or mulatto, for a longer time than seven years, unless such servant or apprentice were, at the commencement of such servitude or apprenticeship, under the age of twenty-one years ; in which case such negro or mulatto may be holden as a servant or apprentice respectively, according to the covenant, as the case shall be, until he or she shall attain the age of twenty-eight years, but no longer. It is said to be a necessary implication from this act, that a binding within the times therein limited is good, and such are the authorities, provided the indenture was executed in a state where slavery is recognised, by a person who, at the time, was a slave. 1 *Yeates* 365, 235 ; 6 *Binn.* 204 ; 4 *Serg. & Rawle* 218. These decisions are in favour of liberty. A servitude for a term of seven years being substituted for unlimited slavery during life, forms the consideration of the contract. To this extent the authorities have gone, but no further. No decision has been made similar to this, which presents the case, as is contended, of an indenture made in this state by a person who had been a slave, in pursuance of a previous agreement in another state. Whatever may be thought of the point when it fairly arises, there is one thing very clear, that if the respondent wishes to detain a fellow being in servitude on that ground, it is nothing unreasonable to require him to produce unexceptionable proof of the fact on which he founds his claim. Is that the case here ? The only evidence is the recital in the indenture, without any testimony to show the circumstances · under which the deed was executed. Whether it was read and explained to her we know not. We are required to presume this, but if presumptions are to be made, they should be in favour of liberty. It is by no means a strained presumption to suppose the master to be informed, and the slave to be ignorant of her rights. Our law protects the interests of

[Commonwealth v. Cook.]

married women, who cannot be deprived of their property without being fully informed of the nature of the instrument which they are required to sign; and surely a person in the helpless and unprotected situation in which the relator was placed, requires equal, if not greater protection. It will be readily seen to what abuses this would lead; and I must be permitted to say, that I am not without suspicion that this case does not form an exception. The pains taken in the indenture to recite the agreement, and the studious care which is taken to explain the joy with which she acceded to the terms, are sufficient, in themselves, to create a doubt of the entire fairness of the transaction. It may be, and I should require some proof to the contrary, that this was an expedient to retain her services, resorted to by the master after he had attained a knowledge of the laws of this state, but a knowledge of which was carefully concealed from her. Hence the necessity of requiring proof that she was fully informed of her rights, to prevent the imposition to which, from her situation, she would necessarily be subject. If an agreement was in truth made in the District, some reason should be assigned why it was not reduced to writing; for it seems unlikely that an agreement of this consequence should be left to rest in parol. Besides, if the fact was as is stated in the indenture, it was so easy of proof, that the absence of testimony in regard to it should have been explained. It is improbable that such a contract would have been made, unless in the presence of some person who might have proved the bargain and the attending circumstances. As we think that the respondent has failed in the proof of this fact, and without intending to express any opinion whether an agreement in the District of Columbia would have entitled the master to her services, the court adjudge the relator free, and entitled to be discharged.

The opinion of the court on this part of the case makes it unnecessary to notice the other points which were pressed upon us by the relator's counsel.